UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DANIELLA KATALIN MELEGH,<br><br>Plaintiff,<br><br>v.<br><br>PROVIDENCE HEALTH & SERVICES, SWEDISH MEDICAL CENTER, and LAURA,<br><br>Defendants. | CASE NO. 2:23-cv-01704-JNW<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

## 1. INTRODUCTION

Defendants' motion for summary judgment comes before the Court. Dkt. No. 34. This case arises from Plaintiff Daniella Melegh's treatment at Swedish Medical Center (Swedish). She brings claims under the Americans with Disabilities Act (ADA), the Public Health Service Act, and Section 504 of the Rehabilitation Act. Dkt. No. 9 at 3. Melegh did not respond to Defendants' motion for summary judgment. For the reasons below, the Court GRANTS Defendants' motion for summary judgment and dismisses Melegh's claims.

## 2. BACKGROUND

Melegh and certain members of her family have a documented history of physically and verbally abusing staff at Swedish. After a particular incident in July 2023, one medical provider charted that "[Melegh] and her family have a long history of disruptive, hostile, and aggressive behavior in medical settings, particularly during emergency department visits and admissions." Dkt. No. 35 at 8.

On September 19, 2023, Melegh had surgery to remove metal hardware previously placed during a repair of a fracture of her right clavicle. The surgery took place at Swedish Medical Center First Hill ("Swedish First Hill"), and the surgeon noted that the surgery went well. However, while in recovery, Melegh began attacking nurses, biting one nurse's arm. According to Melegh's chart notes, she "willfully and purposefully attacked multiple staff in a coherent state," and was escorted off the premises by hospital security. *Id*. at 23–24.

On September 23, four days later, Melegh sought treatment from the emergency department ("ED") at Swedish First Hill after experiencing a seizure. *Id*. at 29. Melegh's medical records show that she became verbally abusive and that she refused to leave the ED after being discharged. *Id*. at 32–33. Security was called to remove Melegh. *Id*. One nurse's chart notes describe Melegh as "whirling around kicking and throwing punches at security." *Id*. at 33. Hospital staff called 911, and one security guard noted that Ms. Melegh had hit and bitten him multiple times. *Id*. at 43.

Swedish decided that it would globally discharge Melegh from its non-emergency facilities after her final follow-up appointment for her clavicle surgery.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 2

*Id.* at 5. Swedish insisted that the follow-up appointment be virtual. *Id.* The day before the appointment, Melegh called Swedish to request an in-person appointment. *Id.* at 51–52. When told that the appointment would need to be virtual, she stated that "she is handicapped and cannot do a virtual appointment." *Id.* at 51. During the call, the nurse on the line—Laura Whittington—eventually told Melegh that she could attend the appointment in person. *Id.* But Whittington called back later that same day and left a message explaining that the appointment would have to be virtual based on the recent ED incident. *Id.* at 52.

### 3.  DISCUSSION

**3.1  Legal standard.**

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party," and a fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To succeed on a motion for summary judgment, "[t]he defendant-movant must demonstrate that, even viewing the evidence in the light most favorable to the plaintiff, the plaintiff cannot satisfy its burden to prove its claims." *JL Beverage Co., LLC v. Jim Bean Brands Co.*, 828 F.3d 1098, 1105 (9th Cir. 2016) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, (1986)). Melegh did not respond to the motion or seek additional time to do so, but the Court must still independently assess whether Defendants have met their burden.

**3.2    Summary judgment on Plaintiff's ADA claim is appropriate.**

Plaintiff pursues a claim under Title III of the ADA. Title III prohibits discrimination on the basis of disability in places of public accommodations, and generally states that "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or operates a place of public accommodation." 42 U.S.C. § 12182(a). "An individual alleging discrimination under Title III must show that: (1) [s]he is disabled as that term is defined by the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; (3) the defendant employed a discriminatory policy or practice; and (4) the defendant discriminated against the plaintiff based upon the plaintiff's disability by (a) failing to make a requested reasonable modification that was (b) necessary to accommodate the plaintiff's disability." *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1082 (9th Cir. 2004); *Karczewski v. DCH Mission Valley LLC*, 862 F.3d 1006, 1010–11 (9th Cir. 2017 (quoting Fortyune, 364 F.3d at 1082).

Melegh has provided no evidence demonstrating that she is a person with a disability within the meaning of the ADA. Under the ADA, a person has a disability if they have: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) [are] regarded as having such an impairment[.]" 42 U.S.C. § 12102(1); *EEOC v. BNSF Railway Co.*, 902 F.3d 916, 922 (9th Cir. 2018). Melegh's complaint suggests that she has an impairment related to head trauma. However, no evidence shows

that Melegh has any impairment that "substantially limits one or more [of her] major life activities." 42 U.S.C. § 12102(1)(A). While Melegh said she was handicapped in her phone call with Whittington, Melegh did not state what her purported disability was, or explain how it interferes with her life activities. Without more, no reasonable juror could conclude that Melegh is a person with a disability under the ADA.

Moreover, even if Melegh were a qualified individual with a disability under the ADA, summary judgment would still be appropriate because she failed to present evidence that Defendants "discriminated against [her] based upon [her] disability by (a) failing to make a requested reasonable modification that was (b) necessary to accommodate the plaintiff's disability." *Fortyune*, 364 F.3d at 1082. The undisputed facts demonstrate that Defendants required Melegh to attend a virtual appointment because she posed a danger to hospital staff, not because of any disability. The ADA does not require a public accommodation to serve an individual who "poses a direct threat to the health or safety of others." 42 U.S.C. § 12182(b)(3). "The term "direct threat" means a significant risk to the health or safety of others that cannot be eliminated by a modification of policies, practices, or procedures or by the provision of auxiliary aids or services." *Id*. The undisputed record establishes that Melegh physically assaulted hospital staff on multiple occasions, including biting both a nurse and a security guard within a nine-day period.

Based on this record, no reasonable juror could find that Defendants' actions were motivated by Melegh's alleged disability of head trauma rather than legitimate safety concerns.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 5

### 3.3 Summary judgment on Plaintiff's remaining claims is appropriate.

Melegh also pursues a Rehabilitation Act claim. "[U]nder Section 504 of the Rehabilitation Act, a plaintiff must show: (1) he is an 'individual with a disability'; (2) he is 'otherwise qualified' to receive the benefit; (3) he was denied the benefits of the program *solely by reason of his disability;* and (4) the program receives federal financial assistance. *Weinreich v. L.A. Cty. Met. Transp. Authority*, 114 F.3d 976, 978 (9th Cir. 1997) (footnote omitted). Because "[t]here is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act," courts often analyze the two together. *Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999). Accordingly, the Court grants summary judgment on Melegh's Rehabilitation Act claim for the same reasons as her ADA claim. Melegh cannot show that Defendants denied her benefits "solely by reason of" any disability when the undisputed evidence establishes that Defendants' decision was based on safety concerns.

Melegh brings her final claim under Section 1908 of the Public Health Service Act, 42 U.S.C. § 300w-7. That statute prohibits discrimination on the basis of sex or religion in certain federally funded programs. *See* 42 U.S.C. § 300w-7(a)(1), (2). It does not prohibit disability discrimination. Accordingly, Melegh has no cognizable claim under this statute, and summary judgment is appropriate.

### 4. CONCLUSION

In sum, Defendants' motion for summary judgment is GRANTED, and Plaintiff's claims are DISMISSED with prejudice. Dkt. No. 34. The Clerk of the Court is DIRECTED to enter judgment and close this case.

Dated this 9th day of December, 2025.

Jamal N. Whitehead
United States District Judge

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 7